tilling Company of America to answer herein was extended by the plaintiff's attorney by stipulations, all substantially as follows:

"This stipulation is given upon condition that the issue herein shall remain as of original date, and that the plaintiff may at any time after such date of issue serve a notice of trial, and file a note of issue for the special term of the court for the trial of equity cases, appointed to be held in and for the county of Albany at the city hall in the city of Albany on the 16th day of June, 1900."

This stipulation was, in effect, an agreement that this case should be tried at the special term for the trial of equity cases held in the county of Albany. Nash v. Ice Co., 53 Hun, 637, 6 N. Y. Supp. 913. The Distilling Company of America did not join in this stipulation, and asserts that it should not be bound thereby. However, its president, Samuel M. Rice, its secretary, Theodore H. Wentworth, and its assistant secretary, Rudd Cheslett Rann, are bound by this stipulation. They would naturally be assumed to have the interest of the defendant the Distilling Company of America in mind, and they have agreed by their stipulation to have the trial of this case held in Albany.

Certain witnesses residing in New York county and elsewhere are stated in defendants' affidavits to be necessary for the defendants upon the trial of this action. The testimony to be given by these witnesses is as much or more for the benefit of the parties other than the distilling company than for it. These parties must be assumed to have had those witnesses in mind when they stipulated to try the case in Albany, and they can be easily subpoenaed to appear there. As to the officials of the Manhattan Trust Company, the plaintiff offers to stipulate that, if their testimony becomes necessary in order to show the amount of money received by the reorganization committee, and deposited with the Manhattan Trust Company, he will accept a verified statement from the books of the company, certified by any responsible officer thereof. Hence we have a case which plaintiff, a resident of Albany county, desires tried there, and all the defendants save one have stipulated to try in Albany county, and the principal officials of this one have assented thereto. It also appears, and it is a matter of common knowledge, that a much more speedy trial can be had in Albany county than in New York. Should the place of trial be changed to New York county to accommodate one defendant? The case cannot be tried in piecemeal. The wish of one defendant and the convenience of the few witnesses residing in New York county should not, in my opinion, prevail over the wishes of the plaintiff and the stipulation of the other defendants. Motion to change place of trial denied, with $10 costs.

---

(53 App. Div. 313.)

WEIL et al. v. ABRAHAMS et al.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. LANDLORD AND TENANT—PREMISES—USE.

Covenants in a lease that the building is to be used and occupied as an oilcloth store and dry-goods store, and that the lessees will place no sign at the entrance, except as may be indicated and consented by the lessor, prohibit the lessees from displaying an auctioneer's flag and carrying on an auction business on the premises, and from selling goods therein other

than oilcloths and dry goods, though there is no express covenant that the premises are not to be used for any other purpose.

**2. SAME.**

Covenants in a lease restricting the lessee's use of the demised premises apply to his use and occupation while occupying the premises before the beginning of the term, free of rent, under the lessor's permission.

Appeal from special term, New York county.

Action by Jonas Weil and another against Samuel Abrahams and another. From an order of the supreme court, made at the special term, granting a preliminary injunction, defendants appeal. Affirmed.

The following is the opinion of the court below (LAWRENCE, J.):

The plaintiffs are the landlords of a building on the southeast corner of Grand and Essex streets, in the city of New York, which is not quite completed. Plaintiffs leased to the defendants, by a written lease entered into on the 22d of November, 1899, the corner store of the building, to be used and occupied as an oilcloth store and dry-goods store, which lease was to commence on May 1, 1900, and to continue three years. It is not disputed that the lease, as at first prepared, stated that the premises were to be used and occupied as an oilcloth store, and that subsequently, at the request of the defendants, the words "and dry-goods store" were inserted in the lease, and that the lease was then executed. By a note dated November 21, 1899, the plaintiffs permitted the defendants to occupy the store from March 1, 1900, to May 1, 1900, free of rent. It is claimed that the defendants are carrying on an auction business in violation of the covenant contained in the lease, and in violation of the understanding upon which the permission to occupy the store between March 1 and May 1, 1900, free of rent, was granted; and a preliminary injunction restraining the defendants from carrying on such auction business has been granted. There was a covenant in the lease on the part of the defendants that they would "neither place, or cause or allow to be placed, any sign or signs of any kind whatsoever at, in, or about the entrance to said store, except in or at such place or places as may be indicated by the said landlords, and consented to by them in writing." It is alleged in the complaint that in violation of this covenant the defendants are displaying from said premises an auctioneer's flag; and they are by the order further restrained from displaying from said premises such flag, or any other notice or signs indicating that auction sales are to take place on the premises, and from selling any goods upon said premises other than oilcloths or dry goods. The motion comes before the court on the return of the order to show cause why the injunction should not be continued during the pendency of the action. The defendants resist the motion, claiming that the plaintiffs perfectly well knew at the time they executed the lease and granted the permission to the defendants to occupy the store rent free from March 1, 1900, to May 1, 1900, that the defendants were engaged in Sixth avenue in conducting auction sales of oilcloths and their incidents, and dry goods and their incidents, and that the plaintiffs understood that the defendants would auction oilcloths and sell other wares on said premises, together with dry goods, and that it was never intended to restrict the manner of sale by the defendants, but as a matter of fact the defendants continually conducted auction sales of dry goods and oilcloths, but occasionally sold job lots at auction, which it is their business to buy, and which manner of sale is the only profitable way in which they could be disposed of. There are affidavits also read on the part of the defendants refuting the allegations in the plaintiffs' papers that the business in question is calculated to annoy parties occupying other stores in said building and in the vicinity, and alleging that there is absolutely no noise or annoyance of any kind whatever in said place to anybody. These allegations are in turn denied by the plaintiffs, and the questions, therefore, that are presented by this motion, are: First, do the words contained in the lease prohibit the defendants from carrying such as is described in the defendants' own papers? And, secondly, if they are so prohibited, do the terms of the lease apply to the permission granted the defendants to occupy the store from March 1 to May 1, 1900, free of rent? I think both of these questions must be answered in the affirmative. A question almost precisely simi-

lar was presented in the case of Steward v. Winters, 4 Sandf. Ch. 587. In that case, a lease for a store contained a clause that it should be occupied for "the regular dry goods jobbing business, and for no other." It was held that the lessee could not carry on in the store the business of an auctioneer. It was further held that, if the tenant conducted the auction business in the store, the lessor might restrain him from pursuing that business by injunction, and that, where the lessee covenants for a particular use of the demised premises, equity will restrict him to that use, without any irreparable or even substantial injury being shown from a breach of the covenant. In that case the vice chancellor said: "Without wasting time upon the well-established distinction between a dry-goods jobber and an auctioneer, which is too clearly marked to be confounded or obliterated by affidavits, I will proceed to the only question in the cause,—that of jurisdiction. It is said that the remedy at law for damages is adequate, and that so far from there being an irreparable injury by the continuance of the breach of this covenant, it is shown that there can be no injury at all. I apprehend that we are not to regard this subject in the manner indicated by the latter proposition. The owner of land, selling or leasing it, may insist upon just such covenants as he pleases touching the use and mode of enjoyment of the land; and he is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. He has a right to define the injury for himself, and the party contracting with him must abide by the definition."

Now, in this case it is admitted that the right to occupy the premises for the dry-goods business was obtained after the preparation of the lease, which stated that the premises were to be used and occupied as an oilcloth store. This addition to the proposed lease was made at the request of the defendants, and by that request, I think, the parties put a practical construction upon the language of the lease, and agreed that the premises could not be occupied as a dry-goods store without the permission of the landlords. That being so, it is perfectly clear that the auction business could not be carried on upon the premises by the defendants unless the permission so to do was inserted in the lease. The contention by the defendants that the auctioning off of goods was merely incidental to the oilcloth business or to the dry-goods business cannot, in my opinion, be maintained, not only because a sale by auction is not the usual way of conducting the oilcloth and dry-goods business, but also because, as was shown in the case of Steward v. Winters, supra, a dry-goods business is very different from an auction business. Nor do I think that there is any force in the contention of the defendants that the covenants in the lease do not apply to the use and occupation of the premises in question between the 1st of March and the 1st of May, 1900. In the note or memorandum dated November 21, 1899, the plaintiffs, in addressing the defendants, say: "This is to certify that you may occupy store rented by you for a term of three years from May 1, 1900, in building corner Grand & Essex Sts., from March 1, 1900, to May 1, 1900, free of rent." There is nothing in this to show that there was to be any difference in the nature of the occupation of the store between March and May, 1900, from that which was to follow for the three years under the lease, except that such occupation was to be free of rent. The two instruments must be read together, and must be regarded as one and the same; and it seems idle to say that while the plaintiffs deemed it essential that they should restrict the kind of business which the defendants were to carry on for the three years following the 1st of May, 1900, they intended to permit a different occupation for a period during which the defendants paid no rent and the plaintiffs received no compensation. For these reasons, I think that the injunction should be continued until the cause can be tried; ten dollars costs of motion to the plaintiff. Settle order on one day's notice.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and HATCH, JJ.

Moses Feltenstein, for appellants.
Boudinot Keith, for respondents.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of LAWRENCE, J.